Filed 8/6/26  P. v. Negrete CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ISAIAH DAVID RIVERA NEGRETE,<br><br>    Defendant and Appellant. | F090525<br><br>(Super. Ct. No. CR-23-002137)<br><br>**OPINION** |

-ooOoo-

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Stanislaus County.  Carrie M. Stephens, Judge.

Richard L. Fitzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*]      Before Detjen, Acting P. J., Franson, J. and Harrell, J.

## INTRODUCTION

Appellant and defendant Isaiah David Rivera Negrete (appellant) was charged with driving under the influence causing injury and other offenses. He pleaded to driving under the influence causing injury and was placed on probation. While he was on probation, he was arrested for violating probation by drinking and committing new offenses. After a contested hearing, the trial court revoked probation and imposed a prison term.

On appeal, appellate counsel filed a brief that summarized the facts with citations to the record, raised no issues, and asked this court to independently review the record. (*People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).) Appellant did not file a supplemental brief on his own behalf. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On or about September 1, 2023, an information was filed in Stanislaus Superior Court case No. CR-23-002137 charging appellant with committing the following offenses on or about December 26, 2022: count 1, felony driving under the influence which proximately caused bodily injury to the first victim (Veh. Code,[1] § 23153, subd. (a)); count 2, felony driving with a blood-alcohol level of 0.08 percent or higher and causing injury to the same victim (§ 23153, subd. (b)); count 3, felony hit and run causing injuries to the first, second, and third victims (§ 20001, subd. (a)); counts 4 and 5, misdemeanor resisting arrest of two different officers (Pen. Code, § 148, subd(a)(1)); and count 6, misdemeanor giving false information to a peace officer (Pen. Code, §148.9, subd. (a)).

There were two special allegations as to counts 1 and 2, that he caused injury to more than one person, respectively, the second and third victims (§ 23558); and one special allegation that he had a prior conviction for violating section 23152, subdivision (b) in 2021, within the preceding 10 years.

---

[1]     All further statutory citations are to the Vehicle Code unless otherwise indicated.

**Plea and Probation**

On January 17, 2024, appellant pleaded no contest to count 1, felony driving under the influence proximately causing bodily injury (§ 23153, subd. (a)). The trial court dismissed the other charges and special allegations.[2]

On the same day, the trial court suspended imposition of sentence and placed appellant on probation for three years subject to certain terms and conditions, including service of 180 days in county jail, obeying all laws and the rules of the probation officer, and submit his person, vehicle, and residence to search and seizure at any time of the day or night by any law enforcement officer, with or without probable cause, reasonable suspicion, or a search warrant.

**Violation of Probation**

On October 18, 2024, the probation officer filed a report with the trial court, stating appellant violated probation in this case because he was arrested by the Modesto Police Department, on or about October 16, 2024, for committing multiple domestic violence offenses and resisting arrest. On the same day, the trial court summarily revoked appellant's probation in case No. CR-23-002137 and he was remanded into custody.

## PRELIMINARY HEARING AND CONTESTED
## PROBATION REVOCATION HEARING

On October 31, 2024, the trial court convened a hearing to address two matters: (1) the preliminary hearing for the new domestic violence and resisting arrest charges

---

[2] During the plea proceedings, the trial court advised appellant: "Drinking and driving is inherently dangerous. If you drive under the influence of alcohol or drugs, or a combination of the two, and by that driving you cause the death of someone, the law permits the [District Attorney] … to file murder charges against you." Appellant said he understood.

filed in case No. CR-24-013167, and (2) the contested probation revocation hearing in case No. CR-23-002137.

The court began with the preliminary hearing in the new case with the domestic violence and resisting charges. The witnesses were M.N., the victim in the domestic violence charges, and two officers who investigated the case.

## The Victim

M.N. testified she was in a dating relationship with appellant for about one year, and they became engaged. On September 22, 2024, M.N. went to a baby shower, and then met up with appellant at a sushi restaurant. When she arrived, he was drinking sake bombs, an alcoholic beverage. She joined him and they drank three sake bombs together. They left the sushi restaurant and drove to appellant's house in their separate cars. They sat around and talked and decided to go to another restaurant for a drink.

M.N. testified that when they left appellant's house, he told her to drive because there was an alcohol-detection device mounted on the driver's side of his car. The device was installed because he was on probation, and he had to blow into it to drive the car. Appellant said he had been able to drive from the sushi restaurant to his house, because he knew that "[h]e had to get there within a certain amount of time before so many beeps" when the car would stop.

M.N. had placed leftover food from the baby shower on the front passenger seat. When appellant opened the passenger door, the food fell on the ground and he said it was not a big deal. Appellant got into M.N.'s car and they argued about the food and other matters. M.N. decided not to drive to the restaurant and turned around. Appellant threw his cell phone inside the car and broke the windshield. Appellant got into the driver's seat and sat on top of M.N. Appellant slapped her and banged her head backwards on the headrest of the driver's seat. Appellant stayed on top of M.N. and took over driving. She told him to stop but he kept driving. Appellant said she was lucky he did not kill her.

4.

She threw his cell phone out of the window. He stopped the car and got out to get it. M.N. took control of her car and drove away.

M.N. testified about incidents that occurred on October 12, 2024, when she met appellant at his house at night. They drank and talked and then went into his bedroom. Appellant performed acts of oral sex on M.N., bit her vagina twice, and she objected. Appellant said he was mad because she said something offensive. Appellant threw her across the bed and against the wall. M.N. said she was going to leave, and appellant pushed her back to the mattress and said no. Appellant spit on her and slapped her several times.

M.N. got up and again said she was leaving. Appellant threw her on the bed, got on top of her, and straddled her body. M.N. told appellant that he "[didn't] want to do this" because he was on probation. Appellant got mad and put one hand on her neck and choked her, and kept saying, "Look what you made me do."

M.N. was afraid and called out to "Siri" on her cell phone to call 911. Appellant grabbed her cell phone and put it away. Appellant dragged M.N. off the bed by her hair to the front door and said he was going to throw her out. Appellant then said he was again going to drag her by her "beautiful, long, black hair" and dragged her back to the bedroom.

Appellant put M.N. on the bed and sat on top of her. He pulled out his cell phone and acted like he was calling the mother of his children and told her to "come right now. This b[****] is acting stupid. Yeah, come right now. And [he] goes, hurry. And then he hung up the phone." Appellant told M.N. he was going to "f[***] [her] up. I'm going to have her f[***] you up. I'm going to have her claw my face, call the cops and tell them you broke into my house and caught me f[***]ing my baby mamma."

M.N. asked to leave. Appellant said no because she was just going to call the police on him. M.N. said she would not but he again refused. Appellant held her tight and fell asleep, and she was finally able to get away.

**The investigation and appellant's arrest**

On October 15, 2024, M.N. called the police and reported appellant beat her. On the same day, Modesto Police Officer Blum responded to M.N.'s call. M.N. reported that appellant assaulted her. Blum took photographs of numerous injuries on her body.

Also on the same day, Officer Blum went to appellant's house, accompanied by Officer Ureno and two other officers. They were all wearing marked uniforms. Blum knocked on the front door and identified the group as police officers. There was a delay, and appellant eventually opened the interior door but not the outer screen door.

Officer Blum asked appellant to step outside so they could talk about an incident. Appellant refused. Blum told him that he was under arrest and needed to open the screen door. Appellant started to back away from the front doorway and said he needed to call his child's mother and retreated into the house. Blum repeatedly ordered him to open the front door. Appellant said he could not come outside, and he had to call the child's mother.

Officer Ureno broke through the outer screen door and gained entry. As Ureno did so, appellant grabbed his five-year-old child, who started crying and was visibly upset. Officer Blum advised appellant not to do this in front of the child and repeatedly told him to put down the child. Appellant held onto the child and appeared to be using the child as a barrier to prevent the officers from taking him into custody. Blum tried to pull the child away and appellant held on tighter. Ureno grabbed appellant's arms from behind, and Blum was finally able to get the child away from appellant.

Appellant was advised several times that he was under arrest and to place his hands behind his back. Appellant refused and resisted the officers. The officers were unable to overcome appellant's resistance, and Officer Ureno had to use a Taser to gain control over him.

6.

**The Trial Court's Orders**

The trial court held appellant to answer in the new case No. CR-24-013167 on multiple counts of domestic violence and resisting arrest.

The trial court also found probable cause that appellant violated the terms and conditions of his probation in case No. CR-23-002137 by consuming alcohol and driving a vehicle and committing new offenses.

**Sentencing**

On September 24, 2025, the trial court conducted the sentencing hearing after appellant was convicted of the domestic violence and resisting offenses in case No. CR-24-013167.

The trial court imposed an aggregate sentence of eight years four months for both case No. CR-24-013167 and the probation violation case No. CR-23-002137.

In case No. CR-24-013167, the trial court imposed the upper term of six years for count 8, child endangerment, with consecutive sentences of one year (one-third the midterm) for count 3, willful and unlawful infliction of a corporal injury resulting in a traumatic condition on M.N. (§ 273.5, subd. (a)), and eight months (one-third the midterm) for count 9, resisting an executive officer, on or about October 15, 2024 (§ 69). In case No. CR-23-002137, the court imposed a consecutive term of eight months (one-third the midterm) for count 1, driving under the influence proximately causing bodily injury (§ 23153, subd. (a)).[3]

On the same day, appellant filed a timely notice of appeal in case No. CR-23-002137, the probation revocation case.

---

[3] During the pendency of this appeal, appellate counsel moved for the trial court to correct the calculation of appellant's presentence credits. On March 20, 2026, the trial court filed an amended minute order and abstract of judgment that corrected appellant's credits.

## DISCUSSION

As noted above, appellate counsel filed a *Wende* brief with this court. The brief also includes counsel's declaration that appellant was advised he could file her own brief with this court. On March 24, 2026, this court advised appellant by letter that he could file a supplemental letter or brief raising any arguable issues. Appellant did not do so.

After independent review of the record, we find no reasonably arguable factual or legal issues exist.

## DISPOSITION

The judgment is affirmed.